[Cite as *State v. Hurt*, 2022-Ohio-2039.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,             :

                                    No. 110732

    v.                              :

DARNELLE HURT,                          :

    Defendant-Appellant.            :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART;
                  AND REMANDED
**RELEASED AND JOURNALIZED:** June 16, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-651293-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Connor Davin and Kristin M. Karkutt,
Assistant Prosecuting Attorneys, *for appellee.*

The Law Office of Jaye M. Schlachet, and Eric M. Levy,
*for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Darnelle Hurt, appeals from the trial court's
judgment after a jury trial finding him guilty of felony murder, voluntary

manslaughter, felonious assault, and domestic violence. Finding merit to the appeal, we affirm in part, reverse in part, and remand for a new trial.

## I.    Factual and Procedural Background

{¶ 2} On June 29, 2020, Hurt was charged in a six-count indictment as follows: Count 1, murder in violation of R.C. 2903.02(A); Count 2, felony murder in violation of R.C. 2903.02(B); Count 3, voluntary manslaughter in violation of R.C. 2903.03(A); Count 4, felonious assault in violation of R.C. 2903.11(A)(1); Count 5, felonious assault in violation of R.C. 2903.11(A)(2); and Count 6, domestic violence in violation of R.C. 2919.25(A). Counts 1 through 5 carried one- and three-year firearm specifications. The charges arose out of the shooting and death of Melvin Dobson on April 4, 2020.

{¶ 3} At trial, Tannika Dobson testified that on April 4, 2020, she was at her Cleveland apartment with her three young children. Tannika had given birth three weeks earlier to her third child and asked Hurt, the father of the children, to come over to help. Hurt did not live with Tannika and the children. Tannika said that Hurt came over and was cleaning, doing laundry, and watching the children during the day while she slept.

{¶ 4} Tannika testified that her aunt, Misty Dobson, came over during the day and Misty and Hurt showed each other their guns. Tannika said that when she woke up later that night, she was "irritated and in pain." She said the children were arguing and when she told them to stop, she and Hurt got into an argument about disciplining the children. She said the argument became "tense" and "heated" and

Hurt eventually "pulled his gun" on her and told her he was "tired of her belittling him as a man." Tannika said she was afraid because she knew that Hurt's gun was loaded. She testified that she told Hurt to gather his things and leave and that he turned the couch over looking for the car keys, which she had hidden from him. She then texted one of her girlfriends and advised her that she might need her to call the police; she also texted her father, Melvin Dobson, and asked him if he could come over.

{¶ 5} Tannika testified that she also called 911 on her cell phone but did not speak with the dispatcher because she was afraid that Hurt would shoot her if he knew she was calling the police. A tape recording of the 911 call was played for the jury (state's exhibit No. 1). In the recording, Tannika can be heard asking Hurt, "You're going to pull a gun on me? You're going to shoot me? You're going to kill me?" Tannika testified that she wanted the dispatcher to hear the conversation so the police would come to the house.

{¶ 6} Unfortunately, because Tannika did not give her address to the dispatcher, the police were dispatched to Tannika's former address because she had previously called 911 from her cell phone for service at the former address. Cleveland police officers responded to the former address and determined that the property was vacant and no one there was in distress.

{¶ 7} Meanwhile, Melvin drove to Tannika's home. Tannika testified that when she let him in the front door, she told him that Hurt had pulled a gun on her and she was scared. Tannika said that Melvin "was mad" and immediately "darted"

toward Hurt, pulled his gun out, and pointed it at Hurt, who did not have his gun out when Melvin arrived. Tannika testified that Hurt was standing "half-way to the back door" and could have left the apartment when Melvin arrived. She said she does not know who shot first, but that she took her children upstairs after a bullet whizzed by her head as she was standing by the front door with Melvin's back toward her.

{¶ 8} Tannika testified that when the shooting stopped, she looked over the banister and saw Melvin fall down. She said that Hurt ran out the back door of the apartment but then came back in and picked up Melvin's gun. She said that Hurt told her, "I didn't want to do this; try to save him; call the police," and then ran out again. State's exhibit No. 6, surveillance video of the area surrounding Tannika's apartment for that evening, shows someone exiting, reentering, and again exiting Tannika's apartment through the back door, and then running through the courtyard of the apartment complex and down the street away from the property.

{¶ 9} After Tannika called 911, EMS personnel responded to the scene and then transported Melvin to the hospital, where he died. Cleveland police officers and homicide detectives also responded to the scene. Detective Darren Robinson testified that he found two 9 mm shell casings and eight .22-caliber cartridge casings on scene, although no firearms were recovered. Cleveland police detectives later learned that Melvin's girlfriend had allowed him to use her 9 mm handgun the night of the murder, and there was a 9 mm magazine containing 17 live rounds on the front seat of the car Melvin drove to Tannika's house that night.

{¶ 10} Dr. David Dolinak, the deputy medical examiner in the Cuyahoga County Medical Examiner's Office who performed Melvin's autopsy, testified that Melvin died of 12 gunshot wounds as the result of a homicide. Kristen Koeth, a forensic scientist in the Cuyahoga County Medical Examiner's Office, testified that the bullet fragments recovered from Melvin's body were consistent with small-caliber ammunition, and that there were three whole .22 caliber bullets in Melvin's body that came from the same unknown firearm. She testified further that the two 9 mm shell casings recovered at the scene came from the same gun.

{¶ 11} Hurt was apprehended and arrested by the Fugitive Task Force on June 18, 2020. The police recovered a 9 mm gun during Hurt's arrest but later determined it was not the same gun that was used on April 4, 2020, to kill Melvin.

{¶ 12} The trial court denied Hurt's Crim.R. 29 motions for acquittal at the close of the state's case in chief and again at the conclusion of trial. The jury found Hurt not guilty of Count 1 but guilty of all other counts, including the one- and three-year firearm specifications on Counts 2-5. At sentencing, the trial court merged Counts 3 and 4 into Count 2, felony murder, and sentenced Hurt to 15 years to life in prison on Count 2, consecutive to the three-year gun specification; eight years in prison on Count 5, consecutive to three years on the gun specification; and 180 days on Count 6, to be served concurrent to the sentence on Count 2. The court ordered the three-year sentences on the gun specifications to be served consecutively, for a total sentence of 21 years to life in prison. This appeal followed.

## II. Law and Analysis

### A. Jury Instructions Regarding Murder and Voluntary Manslaughter

{¶ 13} In his first assignment of error, Hurt contends that the trial court failed to properly instruct the jury on murder and voluntary manslaughter. He contends that because voluntary manslaughter is an inferior degree of murder, the trial court erred in informing the jury that it could find him guilty of both offenses. We agree.

{¶ 14} In Count 1, the state charged that Hurt murdered Melvin by purposely causing his death. R.C. 2903.02(A). In Count 2, the state charged that Hurt murdered Melvin while committing or attempting to commit a felonious assault against him, commonly referred to as felony murder. R.C. 2903.02(B). In Count 3, the state charged Hurt with the voluntary manslaughter of Melvin, i.e., that he knowingly caused Melvin's death "while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the person into using deadly force." R.C. 2903.03(A).

{¶ 15} Voluntary manslaughter is an inferior degree offense of murder. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 80, citing *State v. Benge,* 75 Ohio St.3d 136, 140, 661 N.E.2d 1019 (1996); *State v. Rhodes*, 63 Ohio St.3d 613, 617, 590 N.E.2d 261 (1992). "A person cannot be convicted of both murder and voluntary manslaughter for the same killing." *State v. Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006, ¶ 24 (1st Dist.). "[T]he jury

must find a defendant guilty of voluntary manslaughter rather than murder if the prosecution has proven, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant has established by a preponderance of the evidence the existence of one or both of the mitigating circumstances." (Emphasis added.) *Rhodes* at *id.* Thus, as this court has stated, "if the trier of fact determines that the defendant is guilty of voluntary manslaughter, *it must enter a verdict of not guilty on any murder charges*." (Emphasis added.) *State v. Amey*, 2018-Ohio-4207, 120 N.E.3d 503, ¶ 12 (8th Dist.).

{¶ 16} The trial court instructed the jury that:

[t]he charges set forth in each count in the indictment constitute a separate and distinct matter. You may consider each count and the evidence applicable to each count separately — or you must consider each count separately, and you must state your finding as to each count uninfluenced by your verdict as to the other counts.

The defendant may be found guilty or not guilty of any of the offenses charged.

(Tr. 703-704.)

{¶ 17} The instruction provided by the trial court allowed the jury to find Hurt guilty of both murder and voluntary manslaughter. However, as the First District found in *Duncan*, where a defendant is charged with both murder and voluntary manslaughter, the jury should be instructed that the defendant can be found guilty of *either* murder or voluntary manslaughter. *Duncan* at ¶ 29.

{¶ 18} In *Duncan*, the First District reversed the defendant's convictions on murder and voluntary manslaughter and remanded for a new trial because the trial court improperly instructed the jury, as the trial court did in this case, that it could

find the defendant guilty of both murder counts as well as voluntary manslaughter. *Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006, at ¶ 29. In *State v. Griffin*, 175 Ohio App.3d 325, 2008-Ohio-702, 886 N.E.2d 921 (1st Dist.), the First District followed *Duncan* and reversed the defendant's convictions for felony murder and voluntary manslaughter where the trial court's jury instructions allowed the jury to find the defendant guilty of both felony murder and voluntary manslaughter and the jury found the defendant guilty of both offenses. *Id.* at ¶ 14.

{¶ 19} We recognize that when *Duncan* and *Griffin* were decided, the Ohio Jury Instructions recommended that a jury be instructed that if it found a defendant had committed murder, but also found that the defendant acted while under the influence of sudden passion or in a sudden fit of rage provoked by the victim, "'then you must find the defendant not guilty of murder and guilty of voluntary manslaughter.'" *Duncan* at ¶ 29, quoting 4 *Ohio Jury Instructions* (2002), CR Section 503.02, at 156; *Griffin* at ¶ 13. The Ohio Jury Instructions were amended in 2007 and now recommend that a jury be told that if it finds a defendant has committed murder, but also finds that the defendant acted while under the influence of sudden passion or in a sudden fit of rage provoked by the victim, "then you must find the defendant guilty of voluntary manslaughter." *Ohio Jury Instructions*, CR Section 503.02 (Rev. Feb. 24, 2007). Although the revised instruction does not explicitly state that the jury must find a defendant not guilty of murder if it finds him or her guilty of voluntary manslaughter, the import of the instruction is clear: a

defendant cannot be found guilty of both murder and voluntary manslaughter for the same killing.

{¶ 20} The state argues that Ohio law allows for inconsistent verdicts and thus, convictions of murder and voluntary manslaughter for the same killing are not prohibited. The state misapprehends the law. In *Brecksville v. Malone*, 8th Dist. Cuyahoga Nos. 75466 and 75651, 2000 Ohio App. LEXIS 587 (Feb. 17, 2000), this court summarized Ohio's approach to inconsistent verdicts:

> It is well settled that the validity of a conviction does not depend on consistency between verdicts on various counts of a multiple count indictment *when a jury finds the defendant guilty of one or more offenses and not guilty on others* even though the difference in the verdicts cannot rationally be reconciled. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. United States*, 284 U.S. 390, 52 S.Ct.189, 76 L.Ed. 356 (1932); *Browning v. State*, 120 Ohio St.62, 165 N.E.566 (1929) (inconsistency does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count). In declining to vacate seemingly inconsistent verdicts, the Ohio Supreme Court reasoned that the defendant received the benefit of the jury's mistake, compromise or lenity *with regard to the acquittal*, and it is not unreasonable for the defendant to accept the burden of the jury's conviction.

(Emphasis added.) *Id.* at 4; *see also State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995 (verdict convicting defendant of one crime but acquitting him of another even when the first crime requires proof of the second may not be disturbed merely because the two findings are irreconcilable).

{¶ 21} Thus, inconsistent verdicts between counts are allowed when the jury convicts the defendant of one count but acquits him of another on a seemingly irrational basis. In this case, there is no acquittal that gives rise to an inconsistent

verdict; Hurt was found guilty of both felony murder and voluntary manslaughter. Accordingly, the state's argument regarding inconsistent verdicts is without merit.

{¶ 22} The state further contends the trial court did not err in instructing the jury it could find Hurt guilty of both murder and voluntary manslaughter because the First District implicitly overruled *Duncan* and *Griffin* in *State v. Everett*, 1st Dist. Hamilton No. C-140275, 2015-Ohio-5273. In *Everett*, the jury found the defendant guilty of the felony murder and voluntary manslaughter of one victim and the aggravated murder and felony murder of a second victim. The trial court merged the felony murder and voluntary manslaughter convictions for the first victim and sentenced the defendant on one count of murder; it also merged the two murder counts regarding the second victim. On appeal, the defendant argued that the trial court erred in denying his motion for a new trial because the felony murder and voluntary manslaughter convictions were inconsistent. *Id.* at ¶ 17.

{¶ 23} The appellate court did not find the "seeming inconsistency" between the verdicts to be a basis for reversal. It reiterated the principle that an inconsistency in a verdict does not arise out of an inconsistency between separate counts but only out of inconsistent responses to the same count. *Id.* at ¶ 18. Then, quoting *Powell*, 469 U.S. at 64-65, 105 S.Ct. 471, 83 L.Ed.2d 461, the court noted that where there are truly inconsistent verdicts, "the most that can be said is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Everett* at ¶ 19. The court stated that a defendant is protected from jury

irrationality or error by the independent review of the sufficiency of the evidence by trial and appellate courts. *Id.*, citing *Powell* at 67. Accordingly, the *Everett* court concluded with respect to the murder and voluntary manslaughter counts that "because the jury's findings were made in response to two separate counts, there was no inconsistency," and it overruled appellant's assignment of error. *Id.* at ¶ 21.

{¶ 24} We do not find *Everett* to be persuasive authority because it misapplied the law regarding inconsistent verdicts. In *Powell*, the United States Supreme Court set forth the rule regarding inconsistent verdicts that it first announced in *Dunn*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932): "[A] criminal defendant convicted by a jury on one count cannot attack that conviction because it is inconsistent with the jury's verdict of acquittal on another count." *Powell* at 58. It then considered whether an exception to the *Dunn* rule should be made where the jury acquits a defendant on a predicate offense count but finds the defendant guilty on the related compound felony count. The *Powell* court concluded that no exception was necessary because the defendant, given the benefit of an acquittal on one count, was required to accept the burden of conviction on the count on which the jury convicted. *Powell* at 69.

{¶ 25} The *Everett* court cited *Powell* in affirming the jury's inconsistent verdicts of murder and manslaughter. It failed to acknowledge, however, that as set forth in *Dunn* and *Powell*, the principle applies only when the jury creates a seeming inconsistency by acquitting on one or more counts but finding the defendant guilty on other counts. In *Everett*, there was no acquittal on any count that created an

inconsistency with the jury's guilty verdicts on the murder and manslaughter counts. Therefore, the court erroneously applied the principle allowing inconsistent verdicts on separate counts in reaching its conclusion that the defendant's convictions for murder and voluntary manslaughter were not inconsistent. Furthermore, the *Everett* court made no reference whatsoever to *Duncan* and *Griffin* and did not distinguish its holdings in those cases.

{¶ 26} The trial court improperly instructed the jury in this case that it could find Hurt guilty of both murder and voluntary manslaughter, which it did. Because the jury found Hurt guilty of voluntary manslaughter, it apparently believed that he had knowingly caused Melvin's death, but also that he was either under the influence of sudden passion or in a sudden fit of rage provoked by Melvin.[1] Having found the mitigating circumstance of provocation, the jury should not have found Hurt guilty of murder. *See Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006, at ¶ 30; *Rhodes* at 617.

---

[1] When a defendant is charged only with voluntary manslaughter, it is presumed that one or both of the mitigating circumstances exists and the state need prove only that the defendant knowingly caused the death of another. *Amey*, 8th Dist. Cuyahoga No. 105847, 2018-Ohio-4207 at ¶ 11, citing *Rhodes*, 64 Ohio St.3d at 618, 590 N.E.2d 261 (1992). When the state charges a defendant with *both* murder and voluntary manslaughter, however, the existence of mitigating circumstances cannot be presumed and the trier of fact must consider whether the defendant satisfied his burden to produce evidence demonstrating the existence of the mitigating circumstances under the voluntary manslaughter statute. *Amey* at ¶ 12, citing *Griffin*, 175 Ohio App.3d 325, 2008-Ohio-702, 886 N.E.2d 921, at ¶ 17. Because the state chose to indict Hurt on both murder and voluntary manslaughter, it was his burden to demonstrate the mitigating circumstances for voluntary manslaughter. The jury apparently concluded that he met his burden, as evidenced by its guilty verdict on Count 3.

{¶ 27} The defense contends that it objected to the jury instructions because it submitted proposed jury instructions that included a proposed instruction on Count 1 that if the jury found that Hurt committed murder and did not act in self-defense, it was then to consider whether his actions constituted the inferior offense of voluntary manslaughter. The defense did not request an instruction that the jury could not convict Hurt of both murder and voluntary manslaughter, however.

{¶ 28} Nevertheless, we find plain error. Plain error is an obvious error or defect in the trial court proceedings that affects a substantial right. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. An alleged error is plain error only if the error is obvious and it affected the outcome of the trial. *Id.* We take notice of plain error with the "utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. The burden of demonstrating plain error is on the party asserting the error. *Roger*s at *id.*

{¶ 29} Here, the trial court's failure to properly instruct the jury that it could not find Hurt guilty of both murder and voluntary manslaughter resulted in a 15-year sentence for felony murder, despite a guilty verdict on the inferior-degree offense of voluntary manslaughter.[2] Accordingly, we take notice of the plain error

---

[2] The Fifth District recently held that although voluntary manslaughter is an inferior degree offense of purposeful murder, it is not an inferior degree offense of felony murder via felonious assault under R.C. 2903.02(B) and, therefore, the trial court erred in instructing the jury over defense objection on the unindicted inferior-degree offense of voluntary manslaughter. *State v. Hawthorne*, 2020-Ohio-756, 145 N.E.3d 372, ¶ 29 (5th Dist.). The Fifth District's holding does not change our analysis that a person cannot be convicted of both murder and voluntary manslaughter for the same killing. Furthermore,

to prevent a manifest miscarriage of justice. *See State v. Austin*, 8th Dist. Cuyahoga Nos. 106215 and 106530, 2018-Ohio-3048, ¶ 58 (a jury instruction constitutes prejudicial error where it results in a manifest miscarriage of justice).

{¶ 30} The first assignment of error is sustained.

## B. Jury Instructions Regarding Aggravated Assault and Involuntary Manslaughter

{¶ 31} In his second assignment of error, Hurt contends that he was denied due process when the trial court refused to instruct the jury, as requested, on (1) the inferior offense of aggravated assault to the felonious assault charges on Counts 4 and 5; and (2) involuntary manslaughter as a lesser included offense of the felony murder charge in Count 2, with the predicate offense of aggravated assault.

{¶ 32} When reviewing a refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal was an abuse of discretion under the facts and circumstances of the case *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). Trial courts should ordinarily give a requested jury instruction if it is a correct statement of the law, it is applicable to the facts of the case, and reasonable minds might reach the conclusion sought by the requested instruction. *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 42 (8th Dist.), citing *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240.

---

this case is not like *Hawthorne*. Unlike the defendant in *Hawthorne*, Hurt was indicted on both felony murder and voluntary manslaughter, the jury was instructed they were separate offenses, and the jury found him guilty of both offenses.

{¶ 33} The Ohio Supreme Court has explained that under Crim.R. 31(C) and R.C. 2945.74, a jury may consider lesser unindicted offenses only if the evidence supports the lesser charge and the lesser charge is either (1) a lesser-included offense of the crime charged; (2) an inferior degree offense of the crime charged; or (3) an attempt to commit the crime charged, if such an attempt is an offense at law. *State v. Deem,* 40 Ohio St.3d 205, 208, 533 N.E.2d 294 (1988); *State v. Davis*, 9th Dist. Summit No. 25826, 2012-Ohio-1440, ¶ 20.

{¶ 34} Counts 4 and 5 charged Hurt with felonious assault in violation of R.C. 2903.11(A)(1) and (2), which provides that "[n]o person shall either (1) cause serious physical harm to another or (2) cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶ 35} Aggravated assault is codified in R.C 2903.12(A)(1), which provides, in part, that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * cause serious physical harm to another." Aggravated assault is an inferior degree offense to felonious assault because it contains elements that are identical to the elements defining felonious assault, except for the additional mitigating element of serious provocation. *State v. Ruppart,* 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627 (8th Dist.), ¶ 25, citing *Deem* at 210-211. Thus, "in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury."

*State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 90, citing *State v. Morrow*, 2d Dist. Clark No. 2002-CA-37, 2002-Ohio-6527, ¶ 7, fn. 2, citing *Deem*.

{¶ 36} Hurt contends that by indicting him on voluntary manslaughter, the state conceded that the jury should consider whether he was under the influence of sudden passion or in a sudden fit of rage brought on by Melvin's provocation when he shot Melvin and, thus, the trial court should have instructed the jury to consider the inferior degree offense of aggravated assault with respect to the felonious assault charges in Counts 4 and 5.

{¶ 37} The state contends that the instruction was properly denied because Hurt's defense was predicated solely on a theory of self-defense,[3] and self-defense is incompatible with a theory of aggravated assault. This court has indeed recognized that aggravated assault and voluntary manslaughter are incompatible with a theory of self-defense because self-defense requires proof of fear while aggravated assault and voluntary manslaughter require a showing of a sudden passion or rage. *See State v. Betliskey*, 8th Dist. Cuyahoga No. 101330, 2015-Ohio-1821, ¶ 24 (jury instruction on aggravated assault not required where defense theory was self-defense); *State v. Loyed*, 8th Dist. Cuyahoga No. 83075, 2004-Ohio-3961, ¶ 14

---

[3]Defense counsel argued in closing that "[t]he evidence presented at this trial has demonstrated that Darnelle Hurt was acting in self-defense on the night of April 4, 2020. * * * His only means of escape under the circumstances that have been described by the evidence presented here [was] to use the firearm that he had in his pocket." (Tr. 742, 745.)

(instruction on voluntary manslaughter not required where defense asserted self-defense because the theories were incompatible and "it must be one or the other").

{¶ 38} But if, as the state would presumably agree, the jury was properly instructed with respect to Count 3, voluntary manslaughter, that it should consider whether Hurt was under the influence of a sudden passion or rage when he killed Melvin — even though Hurt was asserting self-defense to the murder charges — it would be inconsistent to conclude that the jury should not be similarly instructed with respect to the felonious assault charges in Counts 4 and 5. The evidence of Hurt's sudden passion or rage and Melvin's provocation was the same, regardless of to which count it applied. *See State v. Schofield*, 6th Dist. Lucas No. L-93-008, 1994 Ohio App. LEXIS 394, 12 (Feb. 4, 1994) ("The mitigating circumstances contained in the voluntary manslaughter statute, R.C. 2903.03(A), are identical to those listed in the aggravated assault statute, R.C. 2903.12(A), and the relationship that exists between murder or aggravated murder and voluntary manslaughter is the same that exists between felonious assault and aggravated assault.").

{¶ 39} Accordingly, we find that the trial court abused its discretion in not instructing the jury on the inferior-degree offense of aggravated assault with respect to Counts 4 and 5. And because the jury apparently concluded that Hurt was acting under a sudden passion or rage brought on by Melvin's provocation, as demonstrated by its guilty verdict on Count 3, we find that the error was prejudicial to Hurt because, if properly instructed, the jury may have found him guilty on

Counts 4 and 5 of the inferior degree offense of aggravated assault, instead of felonious assault.

{¶ 40} Next, Hurt contends that the trial court denied him due process by not instructing the jury on involuntary manslaughter as a lesser-included offense of Count 2, felony murder, with the predicate offense of aggravated assault, as he requested.

{¶ 41} Hurt was charged in Count 2 with causing Melvin's murder as a proximate result of committing or attempting to commit felonious assault, in violation of R.C. 2903.02(B). R.C. 2903.04, regarding involuntary manslaughter, provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Involuntary manslaughter is a lesser-included offense of felony murder. *State v. Williams*, 8th Dist. Cuyahoga No. 88873, 2007-Ohio-4845, ¶ 32.

{¶ 42} "Aggravated assault cannot from the basis for a felony-murder conviction." *State v. Warner*, 11th Dist. Portage No. 2008-P-0052, 2010-Ohio-4940, ¶ 46; *see* R.C. 2903.02(B). "Instead, when an individual causes the death of another as a result of committing aggravated assault, the crime is involuntary manslaughter in violation of R.C. 2903.04." *Warner* at *id*.

{¶ 43} We have already determined with respect to the felonious assault charges that the trial court should have instructed the jury that if it found that Hurt acted under the influence of sudden passion or rage as a result of provocation by Melvin, it should find that he committed the predicate offense of aggravated assault.

Because an aggravated assault instruction was required, the jury should have also been instructed regarding the felony murder charge that if it found that Hurt's commission of the offense of aggravated assault resulted in Melvin's death, it should find him guilty of involuntary manslaughter. In short, the trial court abused its discretion by not instructing the jury on aggravated assault and involuntary manslaughter. *See Warner* at ¶ 44, 61 (trial court erred by failing to instruct the jury on inferior-degree offenses of aggravated assault and involuntary manslaughter to felony murder charge where the defendant presented sufficient evidence of serious provocation by the victim and that he acted under the influence of sudden passion or rage). Furthermore, the erroneous jury instructions prejudiced Hurt because had the jury been properly instructed, he may have been convicted of involuntary manslaughter instead of felony murder.

{¶ 44} The question is what the remedy should be for the trial court's erroneous jury instructions. Ordinarily, if the court has given a prejudicial jury instruction, the appropriate remedy is a new trial. *State v. Triplett*, 7th Dist. Mahoning No. 17 MA 0128, 2018-Ohio-5405, ¶ 17, citing *State v. Williford*, 49 Ohio St.3d 247, 253, 551 N.E.2d 1279 (1990), and *Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 797 N.E.2d 1006, at ¶ 38-42.

{¶ 45} Hurt contends that it would violate his constitutional protections against double jeopardy and collateral estoppel, however, if we were to reverse his convictions and remand for a new trial. He argues that because the jury apparently found the mitigating elements of passion or rage brought on by Melvin's

provocation, as evidenced by its guilty verdict on Count 3, voluntary manslaughter, this court should vacate the conviction on Count 2 for felony murder and enter a conviction for the lesser-included offense of involuntary manslaughter, retain the conviction on Count 3 for voluntary manslaughter, vacate the convictions on Counts 4 and 5 for felonious assault and enter convictions for aggravated assault, and then remand for resentencing. We decline to do so and instead reverse Hurt's convictions on Counts 2 through 5 and remand for a new trial.

{¶ 46} As noted above, in *Duncan*, the First District reversed the defendant's convictions for murder, felony murder, and voluntary manslaughter because the trial court instructed the jury, as the trial court did here, that it could find the defendant guilty on both murder counts as well as the voluntary manslaughter count. The court remanded for a new trial on all counts after rejecting the defendant's arguments that double jeopardy or collateral estoppel barred his retrial.

{¶ 47} The *Duncan* court noted that "double jeopardy is not an absolute bar to successive trials" and that "the general rule is that a person can be tried a second time for an offense when his prior conviction for that same offense has been set aside in his appeal." *Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006, at ¶ 36. It noted further that although a defendant may not be retried when his conviction is reversed because of insufficient evidence, the United States Supreme Court has held that double jeopardy does not bar retrial when the defendant's conviction has been set aside because of an error in the proceedings leading to the conviction. *Id.* at ¶ 38, citing *United States v. Tateo*, 377 U.S. 463, 465, 84 S.Ct.

1587, 12 L.Ed.2d 448 (1964). As the *Duncan* court found, in making this exception to the general rule against reprosecution for the same offense, the Supreme Court stated:

> Reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, *incorrect instructions*, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

(Emphasis sic.) *Id.* at ¶ 38, quoting *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

{¶ 48} Finding that its reversal was based on trial error and not insufficiency of the evidence, the *Duncan* court concluded that it would not violate double jeopardy for the state to retry the defendant. *Id.* at ¶ 42.

{¶ 49} The *Duncan* court also rejected the same argument Hurt raises in this case, i.e., that double jeopardy precludes retrial for murder because the jury found him guilty of voluntary manslaughter, an inferior-degree offense of murder, and thus implicitly not guilty of murder. Hurt "has no ground to argue that he has an implicit acquittal on the murder charge merely because he was convicted of voluntary manslaughter. Under the instructions given by the trial court, the jury could have acquitted [Hurt] of murder and found him guilty of voluntary manslaughter, *but it chose instead to find [him] guilty of both*." (Emphasis added.)

*Id.* at ¶ 44.  We have no way of knowing how the jury would have found, however, had it been properly instructed.

{¶ 50} The *Duncan* court likewise rejected any assertion that the doctrine of collateral estoppel prohibited retrial.  "Collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006, at ¶ 47, quoting *State v. Lovejoy*, 79 Ohio St.3d 440, 443, 683 N.E.2d 1112 (1997).  The *Duncan* court noted that the defendant was asserting, as Hurt does here, that the jury made a finding of fact that a mitigating factor existed — that the victim had provoked him to act under the influence of sudden passion or a fit of rage — and thus the issue of provocation cannot be relitigated, thereby prohibiting any retrial for murder.  *Id.* at ¶ 48.

{¶ 51} The *Duncan* court rejected this argument, stating:

> The problem with this argument is that, because we are reversing [the defendant's] convictions, none of the findings of fact in the previous trial can be considered valid or final.  Due to the erroneous instructions, we must consider the entire jury verdict — including the finding of fact that [the defendant] acted either under the influence of sudden passion or in a fit of rage provoked by [the victim] — as tainted.  In the interest of justice, [the defendant] will receive an entirely new trial.  [The defendant] cannot pick and choose which findings or rulings from the prior trial he would like to carry over to the next.  All previous findings are invalidated, and both parties must start from scratch.  Therefore, collateral estoppel does not bar [the defendant's] retrial for murder.

*Id.* at ¶ 49.

{¶ 52} We are not persuaded by Hurt's argument that we should rely on the reasoning of the dissenting opinion in *Warner*, 11th Dist. Portage No. 2008-P-0052, 2010-Ohio-4940, to find that the doctrine of collateral estoppel bars remand for a new trial. The *Warner* dissent specifically found that *Warner* was distinguishable from *Duncan* because in *Duncan*, the jury had been erroneously instructed on all counts, whereas in *Warner*, the jury instructions were correct on Count 1 and erroneous on Count 2. *Warner* at ¶ 92 (Cannon, J., dissenting).

{¶ 53} This case is like *Duncan* and, accordingly, as in *Duncan*, we find that double jeopardy and collateral estoppel protections do not bar Hurt's retrial. The first and second assignments of error are sustained, Hurt's convictions on Counts 2 through 5 are reversed, and the matter is remanded for a new trial on those counts.

## C. Jury Instructions Regarding Duty to Retreat and Transferred Intent

{¶ 54} The offenses at issue in this case occurred on April 4, 2020; Hurt was indicted on June 20, 2020, and the case was tried on July 12, 2021. On April 6, 2021, while his case was pending, R.C. 2901.09(B) was amended pursuant to 2020 S.B. 175 to provide that "a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." It was further amended to establish that "[a] trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety." R.C. 2901.09(C).

{¶ 55} In his proposed jury instructions, Hurt requested that the trial court instruct the jury in accordance with amended R.C. 2901.09. The trial court instead gave the following instructions to the jury:

> The defendant is allowed to use deadly force in self-defense. Evidence was presented that may support a finding that the defendant used deadly force in self-defense as applicable to counts one, two, three and four.
>
> The state must prove beyond a reasonable doubt that the defendant did not use deadly force in self-defense.
>
> The state's proof. To prove that the defendant did not use deadly force in self-defense, the state must prove beyond a reasonable doubt at least one of the following: (A) that the defendant was at fault in creating the situation giving rise to the death of Melvin Dobson; (B) that the defendant did not have reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm; (C) the defendant violated a duty to retreat to avoid danger; or (D) the defendant failed to use reasonable force.

(Tr. 714-715.)

{¶ 56} In his third assignment of error, Hurt contends that the trial court did not properly instruct the jury on the applicable law because it did not instruct the jury pursuant to amended R.C. 2901.09 that he had no duty to retreat.

{¶ 57} Whether the trial court erred in failing to apply the new law to Hurt's trial is a legal issue we review de novo. *State v. Pitts*, 2020-Ohio-5494, 163 N.E.3d 1169, ¶ 9 (1st Dist.), citing *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8.

{¶ 58} "A statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48; *see also Van Fossen v. Babcock Wilco Co.*,

36 Ohio St.3d 100, 105, 522 N.E.2d 489 (1988).  There is no language in amended R.C. 2901.09 indicating that the General Assembly intended the statute to be applied retroactively.  A statute may not be applied retroactively where the General Assembly did not so expressly intend.  *Consilio* at ¶ 10.

{¶ 59} Furthermore, "[i]n Ohio, when the General Assembly reenacts, amends, or repeals a criminal statute, the substantive provisions of the former law apply to all pending prosecutions, but the defendants receive the benefit of a reduced 'penalty, forfeiture, or punishment' in the statute as amended, unless the General Assembly expresses another intent." *State v. Solomon*, 2012-Ohio-5755, 983 N.E.2d 872, ¶ 16 (1st Dist.), citing R.C. 1.58, and *State v. Rush*, 83 Ohio St.3d 53, 697 N.E.2d 634 (1998).  This principle arises from R.C. 1.58, which provides:

> (A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:
>
> > (1) Affect the prior operation of the statute or any action taken thereunder;
> >
> > (2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, or incurred thereunder;
> >
> > (3) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;
> >
> > (4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment, and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.
>
> (B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or

punishment, if not already imposed, shall be imposed according to the statute as amended.

{¶ 60} Thus, "if a statute is amended and becomes effective while the defendant's case is pending in the trial court, then its applicability to the defendant's case is guided by R.C. 1.58." *State v. Stiltner*, 2021-Ohio-959, 4th Dist. Scioto No. 19CA3882, citing *State v. Kaplowitz*, 100 Ohio St.3d 205, 2003-Ohio-5602, 797 N.E.2d 977, ¶ 8.

{¶ 61} Applying R.C. 1.58 to this case, we find that R.C. 2901.09 as amended pursuant to S.B. 175 does not set out a penalty, punishment, or forfeiture, but instead provides the substantive law regarding an individual's duty to retreat before using self-defense. Therefore, R.C. 1.58 required the trial court to apply former R.C. 2901.09 to Hurt's pending criminal case "because under R.C. 1.58, *substantive provisions of the former law apply to all pending prosecutions*." (Emphasis sic.) *Stiltner* at ¶ 55. Accordingly, the trial court did not err in instructing the jury on the pre-S.B. 175 version of R.C. 2901.09. *Id.* at ¶ 57 (trial court did not err in instructing the jury on former version of R.C. 2901.05 because the new version became effective while the defendant's case was pending and the General Assembly did not indicate that it intended the amended statute to apply retroactively). Despite Hurt's argument otherwise, the trial court's instruction regarding self-defense was a proper instruction under the existing law at the time of the offenses and trial.

{¶ 62} The dissent concludes that precedent from this court suggests that the trial court's refusal to apply the amended version of R.C. 2901.09 was error because

Hurt's trial occurred after the April 6, 2021 effective state of the amendment. We disagree.

{¶ 63} In *State v. Reyes-Figueroa*, 2020-Ohio-4460, 158 N.E.3d 939, ¶ 23 (8th Dist.), this court noted that R.C. 2901.05 (not R.C. 2901.09, the statute at issue here) was amended three days prior to Reyes-Figueroa's trial and quoted the amended statute.[4] Then, without any discussion whatsoever regarding whether the amended statute applied to Reyes-Figueroa, the court concluded that the trial court properly denied a jury instruction on self-defense because the defendant had not produced sufficient evidence to support the elements of self-defense.

{¶ 64} In *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 14, this court found that the amended version of R.C. 2901.09 did not apply to Walker's case "based on the date of the enactment," which occurred well after Walker's offenses on September 16, 2018, his indictment on October 23, 2018, and trial on October 16, 2019. *Walker* is not on point with this case, where the statutory amendment occurred while Hurt's case was pending.

{¶ 65} *State v. Ellis*, 8th Dist. Cuyahoga No. 109408, 2021-Ohio-1297, is also not like this case. In *Ellis*, the offenses occurred on December 20, 2018, and Ellis was indicted on May 10, 2019. Because R.C. 2901.05 was amended *before* Ellis's

---

[4] The amendment to R.C. 2901.05, effective March 28, 2019, shifted the burden to the state to prove that a defendant did not act in self-defense where the defendant has produced sufficient evidence demonstrating the elements of self-defense.

indictment, this court properly recognized that the amended version of R.C. 2901.05 applied to Ellis's case.

{¶ 66} Finally, in *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, this court found that amended R.C. 2901.05 did not apply because the defendant's trial occurred prior to the effective date of the amended statute. *Id.* at ¶ 24, fn. 2. But the issue here is whether amended R.C. 2901.09 applies when the amendment occurs while a defendant's case is pending. The *Fisher* court's conclusion is not helpful to resolving this issue.

{¶ 67} Hurt also contends that the trial court erred in not instructing the jury on self-defense with respect to Count 5, felonious assault against Tannika, as he requested. He contends that the conviction was based on the bullet that whizzed by Tannika's head as he shot at Melvin and because he was acting in self-defense when he shot at Melvin and the doctrine of transferred intent applies to self-defense, a self-defense instruction should have been given regarding the felonious assault charge against Tannika.

{¶ 68} The state argues that a self-defense instruction was not warranted because Tannika was no threat of harm to Hurt when he shot at her and further, because Hurt had pulled his gun on Tannika earlier in the day. In its closing argument to the jury, however, the state argued that the felonious assault charge was based on the bullet that went by Tannika's head and Count 6, domestic violence against Tannika, was based on Hurt pulling his gun on her during their argument. (Tr. 738-739.)

{¶ 69} The doctrine of transferred intent provides that "where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended and did harm the same person." *State v. Jones*, 8th Dist. Cuyahoga No. 80737, 2002-Ohio-6045, ¶ 79.

{¶ 70} Hurt cites only *State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, as support for his claim that transferred intent applies to self-defense. In *Howard*, the defense asserted, as Hurt does here, that the trial court should have given a self-defense instruction regarding a bystander victim. The court found that even assuming, *without deciding*, that the doctrine of transferred intent of self-defense applied and the trial court erred in not giving the self-defense instruction regarding the bystander victim, the error was not prejudicial because the jury had found that the defendant did not act in self-defense with respect to the original victim. Therefore, the court concluded that even if the court had instructed the jury on self-defense regarding the bystander victim, the jury would have found that the defendant did not act in self-defense with respect to both victims. *Id.* at ¶ 33-35.

{¶ 71} Thus, contrary to Hurt's assertion, it is not clear that the doctrine of transferred intent applies to self-defense. But even assuming, without deciding, that it does, we find no error in the trial court's failure to give a self-defense instruction on Count 5. By finding Hurt guilty of felony murder against Melvin, the jury apparently decided that he was not acting in self-defense. Thus, even if the court had instructed the jury on self-defense regarding Tannika, it would have found that

Hurt did not act in self-defense as to both Melvin and Tannika. The third assignment of error is therefore overruled.

### D. Flight Instruction

{¶ 72} In its instructions at the close of trial, the trial court instructed the jury that testimony had been admitted indicating that Hurt fled the scene and that although evidence of flight did not raise a presumption of guilt, the jury could consider evidence of flight as indicating Hurt's "consciousness of guilt." In his fourth assignment of error, Hurt contends that his convictions should be reversed because the trial court erred in giving this "flight instruction" over his objection. He admits that he left the scene, but contends his leaving was due to panic rather than an attempt to evade detection. He further contends he did not attempt to evade the police because although he initially left the scene, he returned and told Tannika to get help for Melvin; he contacted Tannika on her mother's phone at a later date to discuss what had happened; and he remained in northeast Ohio where the police could find him.

{¶ 73} A flight instruction on consciousness of guilt based on the flight of the accused is appropriate if there is sufficient evidence presented at trial that the defendant attempted to avoid apprehension. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 49. A defendant's mere departure from the scene of the crime, however, does not warrant a flight instruction where there is no evidence of deliberate flight to avoid detection. *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 48. Accordingly, to warrant a flight instruction, it must

be clear that the defendant took affirmative steps to avoid detection and apprehension beyond simply leaving the scene of the crime. *Id.* at ¶ 46. "Flight in this context requires the defendant to appreciate that he has been identified as a person of interest in a criminal offense and is taking active measures to avoid being found." *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 28. This court has repeatedly held that "'a mere departure from the scene of the crime is not to be confused with deliberate flight from the area in which the suspect is normally to be found.'" *State v. Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, ¶ 30, quoting *State v. Norwood*, 11th Dist. Lake Nos. 96-L-089 and 96-L-090, 1997 Ohio App. LEXIS 4420, 13 (Sept. 30, 1997).

{¶ 74} The court has discretion to decide whether to issue an instruction on flight. *Hill* at ¶ 48. A trial court does not abuse its discretion by giving an instruction on flight if sufficient evidence exists in the record to support the charge. *Id.* at ¶ 49.

{¶ 75} We find no abuse of discretion in the trial court's flight instruction. Hurt initially fled the scene and then returned to pick up Melvin's gun, an obviously deliberate attempt to conceal evidence and thereby evade apprehension. Furthermore, despite his assertion at trial that the shooting was in self-defense, Hurt did not turn himself in. Accordingly, the instruction was proper. But even if we were to find that the trial court erred in giving the instruction, we cannot say, and Hurt has not demonstrated, that the error was prejudicial. Reviewing the instruction as a whole, we find that it allowed the jury to reach its own conclusions on the issue of

flight, including whether Hurt actually fled the scene, and his motivation for leaving the scene. Accordingly, the fourth assignment of error is overruled.

### E. Sufficiency and Weight of the Evidence

{¶ 76} In his fifth assignment of error, Hurt contends that the evidence was insufficient to support his felony convictions on Counts 2-5.[5] In his sixth assignment of error, he contends that his felony convictions were against the manifest weight of the evidence. Because we are remanding for retrial, we need only address whether the guilty verdicts were supported by sufficient evidence. *Griffin*, 175 Ohio App.3d 325, 2008-Ohio-702, 886 N.E.2d 921 at ¶ 26; *State v. Donkers*, 170 Ohio App.3d 509, 2007-Ohio-1557, 867 N.E.2d 903, ¶ 55 (11th Dist.).

{¶ 77} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 545, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d

---

[5] Hurt does not challenge his misdemeanor domestic violence conviction on Count 6. Accordingly, his conviction on this count is affirmed.

409, 2016-Ohio-8295, 82 N.E.2d 1124 ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2 492 (1991), paragraph two of the syllabus.

{¶ 78} Hurt acknowledges that because he claimed to have acted in self-defense, he conceded that he knowingly caused Melvin's death when he shot him. *See Amey*, 2018-Ohio-4207, 120 N.E.3d 503 at ¶ 14. Accordingly, there is sufficient evidence supporting the felony murder, voluntary manslaughter, and felonious assault counts.[6]

{¶ 79} Hurt contends that his convictions were not supported by sufficient evidence, however, because the state did not produce sufficient evidence that he was not acting in self-defense. We disagree. The state produced evidence that Hurt (1) created the situation that gave rise to Melvin's murder when he pulled his gun on Tannika, (2) did not use reasonable force under the circumstances because he shot Melvin at least eight times, and (3) did not retreat even though he was nearly half-way to the back door of the apartment. This evidence, if believed, was sufficient to establish that Hurt did not act in self-defense. The fifth and sixth assignments of error are overruled.

---

[6] The state bears no burden in producing evidence that Hurt was provoked by Melvin and acted with a sudden passion or in a fit of rage. That element is in mitigation of a greater offense for which Hurt bore the burden of proof. *Amey,* 2018-Ohio-4207, 120 N.E.3d 503, at ¶ 14, citing *State v. Henry*, 8th Dist. Cuyahoga No. 102634, 2016-Ohio-692, ¶ 29, citing *Rhodes,* 63 Ohio St.3d at 617, fn. 2., 590 N.E.2d 261.

## F. Cumulative Error

{¶ 80} In his seventh assignment of error, Hurt contends that the cumulative effect of the trial court's errors denied him his constitutional right to a fair trial. In light of our remand for a new trial on Counts 2-5, this assignment of error is moot and we need not consider it. *See* App.R. 12(A)(c).

{¶ 81} Judgment affirmed in part; reversed in part; and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

CORNELIUS J. O'SULLIVAN, JR., J., CONCURS;
ANITA LASTER MAYS, P.J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

ANITA LASTER MAYS, P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 82} I concur with the majority's determinations of Hurt's first, second, third as it applies to Tannika, fourth, and the seventh assignments of error. However, I respectfully disagree with the majority's determination of Hurt's third assignment of error as it applies to the self-defense instruction involving Melvin and,

therefore I would not address the sufficiency or manifest weight analysis set forth in the fifth and sixth assignments of error. The majority notes by applying R.C. 1.58 to this case, that R.C. 2901.09 as amended pursuant to S.B. 175 does, not set out a penalty, punishment, or forfeiture, but provides substantive law regarding an individual's duty to retreat. The majority concludes that the trial court was to apply former R.C. 2901.09 to Hurt's case. I disagree.

### 1. Application of the 2021 Amendment

{¶ 83} Effective September 9, 2008, under 152 v S 184, the Ohio legislature amended R.C. 2901.05, which previously did not address self-defense under the burden and degree of proof. The legislation repealed former R.C. 2901.09 and enacted R.C. 2901.09. The statutes set forth the scope of what is commonly known as the castle doctrine[7]

> to create a rebuttable presumption that a person acted in self-defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of entering or has entered, unlawfully and without privilege to do so, the residence or vehicle occupied by the person using the defensive force.

*127th General Assembly Archives* (Substitute Sub.S.B. 184), *http://archives.legislature.state.oh.us/bills.cfm?ID=127_SB_184.,* *1997-2014.* R.C. 2901.09 also stated the individual did not have to retreat under the stated

---

[7] *See District of Columbia v. Heller,* 554 U.S. 570, 573, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), paragraph 1 of syllabus. Holding that self-defense in the home is included in the Second Amendment guarantee of the right to use firearms for traditionally lawful purposes, now known as the castle doctrine. *See also State v. Peacock,* 40 Ohio St. 333 (1883), *State v. Williford,* 49 Ohio St.3d 247, 551 N.E.2d 1279 (1990).

circumstances before engaging in self-defense, that the terms "residence" and "vehicle" had the same meanings as the amended R.C. 2901.05, and that the terms applied to any statute that set forth a criminal offense. Final Analysis Sub.S.B. 184, 127th General Assembly, p. 2.

{¶ 84} Effective March 28, 2019, H.B. 228 shifted the burden to the state under R.C. 2901.05 to prove beyond a reasonable doubt that an individual who asserted the affirmative defense of self-defense under R.C. 2901.05 did not act in self-defense. As introduced, the bill also amended R.C. 2901.09 to eliminate the duty to retreat before using self-defense, commonly known as the stand your ground law, by an individual who is in a place where the individual has the lawful right to be. R.C. 2901.09 was also expressly referenced in R.C. 2901.05 prior to finalization.

{¶ 85} As enrolled, R.C. 2901.09 was not amended at the time due to legislative divisiveness and the governor's veto threat. Cleveland.com, *Ohio Senate Passes Firearms bill but without Stand your Ground Provisions*, https://www.cleveland.com/open/2018/12/ohio-senate-passes-firearms-billbut-without-stand-your-ground-provisions.html (accessed Dec. 7, 2018). However, R.C. 2901.05 incorporated the language regarding permission to act in self-defense under the R.C. 2901.09 castle doctrine circumstances, retained the presumption of self-defense and listed exceptions to the presumption.

{¶ 86} The S.B. 175 amendment to R.C. 2901.05, effective April 6, 2021, mirrors the 2019 version but added the word "presented" to R.C. 2901.05(A).

S.B. 175 concurrently amended R.C. 2901.09 to implement the stand your ground

provision that removed the duty to retreat:

> (B) For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be.
>
> (C) A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety.

*Id.*

{¶ 87} Hurt requested that the self-defense jury instruction include the self-defense statute as amended in 2021 including the duty to retreat in R.C. 2901.05 and R.C. 2901.09. However, the trial court included the duty to retreat in its instructions.

{¶ 88} Currently pending before the Ohio Supreme Court is the question of retroactivity of the 2019 amendment to R.C. 2901.05 to resolve the conflict between the appellate districts. *State v. Brooks*, 2020-1189 and 2020-1250.

{¶ 89} One line of cases determined that the pre-2019 amendment version applied "if the accused committed the alleged offense before the effective date of March 28, 2019." *State v. Cobb*, 3d Dist. Allen No. 1-20-43, 2021-Ohio-3877, ¶ 48, citing *State v. Irvin*, 2020-Ohio-4847, 160 N.E.3d 388, ¶ 26 (2d Dist.); *State v. Brooks*, 2020-Ohio-4123, 157 N.E.3d 387, ¶ 38 (5th Dist.); *Stiltner*, 4th Dist. Scioto No. 19CA3882, 2021-Ohio-959, at ¶ 56-57; *State v. Brown*, 9th Dist. Wayne

No. 19AP0004, 2020-Ohio-529, ¶ 23; *State v. McEndree*, 2020-Ohio-4526, 159 N.E.3d 311, ¶ 46 (11th Dist.).

{¶ 90} A second line of cases held that the 2019 amendment applied "if the defendant's trial occurred after the effective date of the amendment." *Cobb* at ¶ 49, citing *Pitts*, 2020-Ohio-5495, 163 N.E.3d 1169, at ¶ 25; *State v. Smith*, 6th Dist. Wood No. WD-19-070, 2020-Ohio-5119, ¶ 32; *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31; *State v. Lewis*, 2020-Ohio-3762, 156 N.E.3d 281 ¶ 26 (12th Dist.) and this court's holding in *Reyes-Figueroa*, 2020-Ohio-4460, 158 N.E.3d 939, at ¶ 23 (8th Dist.).

{¶ 91} Courts that embrace the latter application of the law have determined that (1) the plain language of the statute provides that it applies "at the trial"; and (2) the amendment is procedural and not substantive so the prohibition against retroactive laws does not apply.

> "[T]he prohibition against retroactive laws 'is a bar against the state's imposing new duties and obligations upon a person's past conduct and transactions, and it is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby.'" *E. Ohio Gas Co. v. Limbach* 26 Ohio St.3d 63, 65-66, 26 Ohio B. 54, 498 N.E.2d 453 (1986), quoting *Lakengren, Inc. v. Kosydar*, 44 Ohio St.2d 199, 201, 339 N.E.2d 814 (1975). * * *
>
> [H.B. 228] changes the burden of proof when asserting defense of another. Therefore, it affects the manner and procedure by which a jury arrives at its verdict.
>
> "Laws of a remedial nature providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws." *EPI of Cleveland, Inc. v. Limbach*, 42 Ohio St.3d 103, 105, 537 N.E.2d 651 (1989), quoting *State ex rel. Holdridge, v. Indus. Comm.* 11 Ohio St. 2d 175, 228 N.E.2d 621 (1967).

*Pitts*, 2020-Ohio-5494, 163 N.E.3d 1169, at ¶ 20-22.

{¶ 92} Due to the district conflicts, on December 30, 2020, the Ohio Supreme Court agreed to address the issues in the consolidated cases of *Brooks*, 2020-1189 and 2020-1250:

> Proposition of law: 2018 H.B. 228, which shifted the burden of proof on self-defense to the prosecution, applies to all trials held after the effective date of the act, regardless of when the alleged offenses occurred; and

> Certified conflict question: Does legislation that shifts the burden of proof on self-defense to the prosecution (2018 H.B. 228, Eff. March 28, 2019) apply to all subsequent trials even when the alleged offenses occurred prior to the effective date of the act?

Oral argument was held on September 21, 2021, and a decision is pending. A decision in *Brooks* would arguably also be determinative of the retroactivity of the 2021 amendment.

{¶ 93} In the instant case, the incident took place on April 4, 2020, and the trial began on July 12, 2021. The amended statute still contains the language in R.C. 2905.01(B)(1) "at the trial." Thus, if the 2021 amendment applies to trials held after the effective date, though Hurt subsequently retreated, he had no duty to do so.

{¶ 94} This court has applied the statute in effect at the time of trial. *Reyes-Figueroa*, 2020-Ohio-4460, 158 N.E.3d 939, at ¶ 23 (8th Dist.), *Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, and *Ellis*, 8th Dist. Cuyahoga No. 109408, 2021-Ohio-1297. *See also Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, at ¶ 24, fn. 2, where this court affirmed the trial court's refusal to apply the burden-

shifting formula of the 2019 amendment because the trial occurred prior to the effective date.

{¶ 95} Based on the precedence of this court, I would determine that the trial court's findings that the 2021 amendment to R.C. 2901.05 did not apply, was in error. However, I would also find that the inquiry does not end there and that the statutes, for these purposes, are inextricably intertwined and are subject to similar rationales. As the majority indicates, the cited cases regarding R.C. 2109.05 do not specifically address the retroactivity of R.C. 2109.09. However, as suggested in the comment to *Ohio Jury Instructions*, 2 CR Section 421.21 (Rev. Sept. 12, 2020) "self-defense, defense of residence — use of deadly force R.C. 2901.05," a trial court must determine as a threshold matter which versions of R.C. 2901.09 and 2905.01 apply. *See* Comment: *The Ohio Castle Doctrine*: *Shielding Criminals With a Presumption of Self-Defense*, 41 Cap. U.L.Rev. 1105, 1106 (2013), which recognized the castle doctrine as codified in R.C. 2901.05(B) and 2901.09.

{¶ 96} The *Ohio Jury Instructions* comment advises that trial courts consult their respective jurisdictions regarding R.C. 2105.09, due to the pending conflicts resulting from the absence of clear intent by the General Assembly as to whether R.C. 2901.05 applies to offenses that were committed before and tried after March 28, 2019. However, the comment first addresses amended R.C. 2109.09 and suggests:

> Effective April 6, 2021, the General Assembly, in R.C. 2901.09, abolished the duty to retreat for any person who was in a place where he/she lawfully had a right to be when he/she used force in self-

defense, defense of another, or defense of his/her residence. Because the General Assembly did not explicitly state whether R.C. 2901.09 applies to offenses that were committed before and tried after April 6, 2021, the court must decide as a threshold matter whether amended R.C. 2901.09 applies as of the date of the trial or the date of the offense.

*Ohio Jury Instructions*, 2 CR Section 421.21 (Rev. Sept. 12, 2020). Pertinent here, the committee offers that *"[b]ecause the language in R.C. 2901.09(C) states what a trier of fact shall not consider, the Committee believes this amendment is applicable to all instructions given on and after April 6, 2021.* (Emphasis added.) *Id. See, e.g., Pitts*, 2020-Ohio-5494, 163 N.E.3d 1169, at ¶ 20-22.

{¶ 97} "It is well settled that a statute is presumed to apply prospectively unless expressly declared to be retroactive." *State v. Gloff*, 2020-Ohio-3143, 155 N.E.3d 42, ¶ 18 (12th Dist.), citing R.C. 1.48. "Section 28, Article II of the Ohio Constitution, prohibits the General Assembly from passing retroactive laws." *Id.* "Applying these two provisions, the Supreme Court of Ohio has established a two-part test to determine whether a statute may be applied retroactively." *Id.*, citing *State v. Gregoire*, 12th Dist. Butler No. CA2019-04-066, 2020-Ohio-415, ¶ 9, citing *Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, at ¶ 10.

{¶ 98} The first inquiry is whether the legislature expressly intended retroactive application. *Gloff* at ¶ 19. The second inquiry is whether the statute is remedial which permits retroactive application or substantive which forbids retroactive application. *Id.*, citing *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 27.

{¶ 99} *Gloff* held that the 2019 amendment to R.C. 2109.05 applies prospectively to trials held after the effective date of the statute per the statutory language that prescribes the actions "at the trial." *Id*. at ¶ 23, R.C. 2901.05(B)(1). *See also Pitts*, 2020-Ohio-5494, 163 N.E.3d 1169, at ¶ 19 ("The plain language of H.B. 228 [R.C. 2901.05] indicates that the new standard for self-defense, defense of another, and defense of residence is to be applied prospectively to trials.") Likewise, the plain language of R.C. 2105.09 (C) provides that "*a trier of fact* [at trial] shall not consider the possibility of retreat as a factor." (Emphasis added.) *Id*. *See also* Comment, *Ohio Jury Instructions*, 2 CR Section 421.21 (Rev. Sept. 12, 2020).

{¶ 100} Next, as to whether the statute is remedial or substantive,

> Ohio courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively (or "retrospectively") and those that do so in a manner that offends our Constitution. *See, e.g., Rairden v. Holden*, 15 Ohio St. 207, 210-211 (1864); *State v. Cook*, 83 Ohio St.3d 404, 410, 700 N.E.2d 570, 576 (1998). We also note that the words "retroactive" and "retrospective" have been used interchangeably in the constitutional analysis for more than a century. *Id*. Both terms describe a law that is "made to affect acts or facts occurring, or rights accruing, before it came into force." *Black's Law Dictionary* (6 Ed.1990) 1317.

*Bielat v. Bielat*, 87 Ohio St.3d 350, 353, 721 N.E.2d 28 (2000).

{¶ 101} Also, the amendments do not attach new legal consequences or impose new duties and obligations. *Pitts*, 2020-Ohio-5494, 163 N.E.3d 1169, at ¶ 20, citing *Landgraf v. USI Film Prods*., 511 U.S. 244, 275, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

{¶ 102} Thus, I would find that Hurt was entitled to an instruction regarding Melvin based on the 2021 amendments to R.C. 2901.05 and 2901.09, which specifically bar consideration by the factfinder of a duty to retreat. For that reason, based on the facts of this case and the applicable law, the failure to apply the 2021 amendments rises to the level of plain error. *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 103} I would not consider the sufficiency and manifest weight assignments of error as they apply to Melvin and would determine that they are moot. App.R. 12(A)(c).