[Cite as *State v. Davis*, 2021-Ohio-2954.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-200249 |
|  |  | C-200250 |
| Plaintiff-Appellee, | : | C-200251 |
|  |  | C-200252 |
| vs. | : | TRIAL NOS. 20CRB-1553A, B |
|  |  | 20CRB-2220 |
| BRITTANY DAVIS, | : | 20CRB-7651 |
| Defendant-Appellant. | : | *O P I N I O N.* |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: August 27, 2021

*Andrew W. Garth*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Elyse Deters*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge**.

{¶1} Following a bench trial, defendant-appellant Brittany Davis was convicted of one count of theft under R.C. 2913.02 and three counts of criminal damaging or endangering under R.C. 2909.06. She now appeals those convictions, presenting two assignments of error for review. We find merit in her second assignment of error related to the imposition of costs. Consequently, we reverse the trial court's judgment in the case numbered 20CRB-7651 regarding costs. We affirm the trial court's judgments in all other respects.

### I. Factual Background

{¶2} The victim, Jaisha Broner, testified about three separate incidents involving Davis. The first occurred on December 15, 2019. Broner went out to dinner with the father of her child, Edward Holmes. Holmes is also the father of one of Davis's children. Broner and Holmes returned to Broner's home after dinner to get some clothing for her children, who were staying at her mother's house.

{¶3} After about ten minutes, Broner heard "bamming, like somebody was beating on something." Although the noise went on for about two minutes, she ignored it because she "didn't know what it was." When the noise started again several minutes later, she opened her door and saw Davis in the back seat of her car with the door open. Davis left in a silver car when she saw Broner and Holmes.

{¶4} When Broner went out to her car, the first thing she noticed was that her tires were flat. She also saw that there were eggs and a bottle of urine in the back seat. A bottle of alcohol had been sprayed all over her child's car seat and the front seat of the car. The gas tank was open, and Broner believed that something had been put in the tank because her car would not start. Additionally, she discovered that her wallet with her identification, credit cards, and $400 to $500 cash was taken.

{¶5} The second incident occurred on January 24, 2020. Broner testified that she was taking her children to get something to eat when she saw that her car windshield was cracked and a brick was sitting on her car.

{¶6} After the first incident, Broner had purchased surveillance cameras for her home. She was able to rewind the video to the day her windshield was damaged. The state submitted two videos into evidence. In the first video, an individual that Broner identified as Davis drove up in a silver car, came up through the sunroof, and threw a brick at Broner's car. The second video showed Davis returning a short time later. She got out of the passenger seat and threw a brick at Broner's car. Broner testified that both videos were clearer on her television than they were in the courtroom and that she was able to identify Davis because she knows Davis's face. She also stated that the person in the video was wearing a black leather jacket and a hood.

{¶7} The third incident occurred on April 26, 2020. At about 8:00 a.m., Broner heard someone "bamming" on her door and yelling. She realized it was Davis because she knows Davis's voice. When Broner opened her door, Davis was outside yelling for her to come out so Davis could "beat her ass." No fight occurred because Davis left. The state presented a video that Broner had recorded through the blinds in her son's bedroom at the front of the house. The video showed a blue Honda driving away. Broner testified that voice in the video was Davis's.

{¶8} Following that encounter, Broner called the police. She went to the police station to make a report in person. When Broner returned home, she saw Davis parked in a blue Honda at the end of the street. Broner went into the house, and two minutes later, Davis began "bamming" on the door again. Broner had to push against the door, which she described as "frail," to prevent it from breaking.

{¶9} When Broner released the door to get her scared children to the back of the house, the door suddenly burst open. Davis then walked back to her car and

3

left the scene. Broner presented photographs showing the damage to the door. She stated that the lock was broken and the "wooden part was kicked in."

{¶10} Davis testified on her own behalf. She stated that on December 15, 2019, the day of the first incident, she was home. She denied stealing Broner's wallet or damaging her car. She further testified that 0n January 24, 2020, the date of the second incident, she had to write a paper for her English class. She worked on it at the home of her friend, Tynisha Alford, from 8:00 p.m. to 1:30 a.m. Davis later admitted that they left Alford's house about 9:30 to go to Alford's mother's house because Alford "had to grab something."

{¶11} Davis also denied being the person in the videos. She testified that she wears glasses, and the person in the video did not have on glasses. She also presented a photograph taken on January 22, 2020, showing her with long, black hair to demonstrate that she was not the person in the videos.

{¶12} As to the third incident on April 26, 2020, Davis admitted that she went to Broner's house because she was upset about the criminal charges filed against her. She acknowledged that it was her voice on the video. She denied returning to Broner's house and breaking the door.

{¶13} Alford also testified. She stated that Davis had been at her home on January 24, 2020, from about 7:30 p.m. until 1:00 a.m. But she acknowledged that they had left the house at around 8:00 p.m. She also acknowledged that she knew nothing about what had occurred related to the criminal charges filed against Davis.

## II. Manifest Weight

{¶14} In her first assignment of error, Davis contends that the trial court erred in finding her guilty of theft and criminal damaging because those findings were contrary to the manifest weight of the evidence. She argues that the state failed

4

to prove her guilt beyond a reasonable doubt. This assignment of error is not well taken.

{¶15} This case rests entirely on credibility. The trial court stated that it believed the victim's testimony. The trier of fact may believe all, some or none of any witness's testimony. *State v. Williams*, 1st Dist. Hamilton Nos. C-060631 and C-060668, 2007-Ohio-5577, ¶ 37. Matters as to the credibility of evidence are for the trier of fact to decide because the trier of fact sees the witnesses in person and is in a better position to weigh the witness's demeanor and credibility. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *State v. Cruzbaez*, 1st Dist. Hamilton No. C-180263, 2019-Ohio-2452, ¶ 22-23.

{¶16} After reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse the convictions and order a new trial. Therefore, the convictions are not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Cruzbaez* at ¶ 21. Therefore, we overrule Davis's first assignment of error.

### III. Court Costs

{¶17} In her second assignment of error, Davis contends that the trial court erred when it imposed costs in the case numbered 20CRB-7651. She argues that because the trial court did not impose court costs at the sentencing hearing, it was contrary to law to impose costs in the sentencing entry. This assignment of error is well taken.

{¶18} R.C. 2947.23(A)(1) states that "[i]n all criminal cases * * *, the judge or magistrate shall include in the sentence the costs of prosecution * * * and render judgment against the defendant for such costs." The imposition of costs is

mandatory, but the trial court has authority to waive the payment of costs at any time after they are imposed, as long as they are still unpaid. *State v. Braden*, 158 Ohio St.3d 462, 2019-Ohio-4204, 145 N.E.3d 235, ¶ 18-23; *State v. Kinley*, 1st Dist. Hamilton No. C-190270, 2020-Ohio-542, ¶ 11.

{¶19} The trial court did not say anything about costs at the sentencing hearing, although they were imposed in the judgment entry. The Ohio Supreme Court has held that a trial court's failure to address court costs and fees at the sentencing hearing and to then impose them in the journal entry is reversible error that requires a remand for the limited purpose of remedying the error. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 11 and 23; *State v. Geary*, 2016-Ohio-7001, 72 N.E.3d 153, ¶ 44 (1st Dist.). Because the trial court did not discuss the imposition of court costs at the sentencing hearing, Davis was denied the opportunity to claim indigency and to seek a waiver of the payment of those costs. *See Joseph* at 44; *Geary* at ¶ 45.

{¶20} Consequently, we sustain Davis's second assignment of error. We reverse the part of Davis's sentence that imposes court costs, and we remand the case numbered 20CRB-7651 to the trial court for the limited purpose of allowing Davis to move for a waiver of payment of court costs. We affirm the trial court's judgments in all other respects.

Judgments affirmed in part, reversed in part, and cause remanded.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.