[Cite as *State v. Parker*, 2022-Ohio-3831.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210440 |
|  |  | TRIAL NO. B-2000027 |
| Plaintiff-Appellee, | : |  |
|  |  |  |
|  | : | *O P I N I O N.* |
| vs. |  |  |
|  | : |  |
| JORDAN PARKER, | : |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 28, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela J. Glaser,* for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Jordan Parker appeals the judgment of the Hamilton County Court of Common Pleas sentencing him to a total aggregate sentence of 13 years in prison after he was found guilty of numerous counts involving his use of a firearm. In four assignments of error, Parker argues (1) that the trial court incorrectly instructed the jury on self-defense, (2) that his counsel's failure to object to the instruction as-given constitutes ineffective assistance of counsel, (3) that his convictions run counter to the manifest weight of the evidence, and (4) that the court failed to make the required findings to sentence him to consecutive sentences. For the reasons that follow, we overrule Parker's first three assignments of error, but we sustain his fourth. Accordingly, we affirm the trial court's judgment in part, reverse it in part, vacate the consecutive nature of Parker's sentences, and remand the cause for the trial court to make the necessary sentencing findings under R.C. 2929.14(C)(4).

### *Facts and Procedure*

{¶2} On January 1, 2020, after celebrating New Year's Eve at a popular Over-The-Rhine bar, Parker, his girlfriend Ashley Thomas, and her sister Jasmine Carter, were walking back to Ashley's car in a nearby parking garage on Sycamore Street in Cincinnati, Ohio. Frederick Moore and his brother Jeffrey Moore entered the same garage with their girlfriends Tisa Weaver and Danielle Carter. A shouting match erupted between Tisa and Jasmine, and the others attempted to physically restrain them from fighting with each other. After a few moments, and some pushing, shoving, and punch-throwing between the female members of the groups, Parker pulled a gun out of his pocket and fired it, striking Frederick, Jeffrey, and Tisa.[1] Parker fled from

---

[1] All three victims survived.

the scene in Ashley's vehicle, crashed, and then fled on foot. Parker was detained several blocks away. At the crash site, police found a gun on the dashboard of the vehicle.

{¶3} On January 10, 2020, Parker was charged with three counts of felonious assault under R.C. 2903.11(A)(1) (Counts 1, 3, and 5), three counts of felonious assault with a deadly weapon under R.C. 2903.11(A)(2), each with two accompanying firearm specifications (Counts 2, 4, and 6), having weapons while under disability under R.C. 2923.13(A)(2) (Count 7), and failing to comply with an order or signal of a police officer under R.C. 2921.331 (Count 8).

{¶4} In April 2021, Parker proceeded to a jury trial on Counts 1 through 6, but waived his right to a jury trial on Counts 7 and 8. The jury found him guilty as charged, as did the trial court on those counts tried to the bench.

{¶5} At sentencing, the court merged Counts 1, 3, and 5 with Counts 2, 4, and 6, and imposed one year each for Counts 7 and 8, in addition to the following sentences:

**Count 2:** 2 years + mandatory 3 years for firearm specification, to be served consecutively and prior to the underlying offense in count 2

**Count 4:** 3 years + mandatory 3 years for firearm specification, to be served consecutively and prior to the underlying offense in count 4

**Count 6:** 3 years + mandatory 3 years for firearm specification, to be served consecutively and prior to the underlying offense in count 6

{¶6} The sentences in Counts 4 and 6 were ordered to be served consecutively to each other. The sentences for Counts 2 and 7 were imposed to run concurrently with each other and Counts 4 and 6. Count 8 was imposed to run consecutively to the

other counts. In total, Parker was sentenced to an aggregate term of 13 years, with credit for 591 days already served.[2] Parker timely appealed, raising four assignments of error for our review.

### *Self-Defense and the Duty to Retreat*

{¶7} In his first assignment of error, Parker argues that the trial court incorrectly instructed the jury on self-defense. Specifically, Parker contends that the jury instructions should have reflected the amendments to the self-defense statute that eliminated the duty to retreat.

{¶8} Parker did not object to the self-defense jury instruction at trial, and therefore has waived all but plain error. *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983). To establish plain error, an appellant must demonstrate: (1) an error, (2) that is obvious, and (3) that affected the outcome of the trial. *See State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶9} Self-defense law in Ohio looks different now than it did several years ago. In 2019, Am.Sub.H.B. No. 228 ("H.B. 228") took effect and amended R.C. 2901.05, thereby "shift[ing] the burden from the defendant to the state to prove beyond a reasonable doubt that the accused did not use force in self-defense." *State v. Brooks*, Slip Opinion No. 2022-Ohio-2478, ¶ 6. The Supreme Court decided in *Brooks* that the amendment "applies to all trials conducted on or after its effective date

---

[2] While not at issue in this appeal, there were two sentencing hearings and two sentencing entries in this case. In a June 15, 2021 hearing, the court sentenced Parker for the case at issue in addition to an unrelated matter, the case numbered B-200154. A corresponding entry was not put on the record. However, Parker was resentenced for both cases on July 15, 2021. Though the record does not make clear exactly *why* he was resentenced, it seemed to be due to an error with the merger of the felonious-assault counts and specifications. The corresponding entry, dated July 29, 2021, ordered the total aggregate sentence to be 13 years to 14 years, six months in the Ohio Department of Rehabilitation and Correction, with credit for time already served. However, a March 8, 2022 nunc pro tunc entry corrected the total aggregate term to *13 years*, with credit for time already served.

* * *, irrespective of when the underlying alleged criminal conduct occurred." *Id.* at ¶ 2.

{**¶10**} In the wake of these changes to the burden-shifting framework, 2020 Am.S.B. 175 ("S.B. 175") took effect on April 6, 2021, and amended R.C. 2901.09 to remove the age-old duty to retreat.[3] The amended R.C. 2901.09(B) provides that "a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(C) was also amended to include that "[a] trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety." This is known as the "stand-your-ground law." *State v. Dixon*, 2d Dist. Greene No. 2021-CA-29, 2022-Ohio-3157, ¶ 9.

{**¶11**} Because the effective date of S.B. 175 was April 6, 2021, and Parker's trial began on April 14, 2021, he contends that the jury instructions should have reflected these amendments even though the shooting occurred well before the effective date. The state contends that "there is no provision in S.B. 175 making the amendments retroactive to acts occurring before the effective date."

{**¶12**} Determining whether a statute can be applied retroactively is generally a two-step test. First, we must determine whether the legislature intended that the statute apply retroactively. *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 27; *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 7. "A statute is presumed to operate prospectively, unless expressly made

---

[3] S.B. 175 also amended R.C. 2307.601, R.C. 2901.05, and R.C. 2923.126. *See* Ohio Leg. Serv. Comm., *Final Analysis*, https://www.legislature.ohio.gov/download?key=15457 (accessed Oct. 5, 2022).

retrospective." R.C. 1.48; *see Brooks*, Slip Opinion No. 2022-Ohio-2478, at ¶ 9. "In order to overcome the presumption that a statute applies prospectively, a statute must 'clearly proclaim' its retroactive application." *Hyle* at ¶ 10, quoting *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, paragraph one of the syllabus.

{¶13} Second, if there is such a clear proclamation, we must determine if the statute is in violation of the Ohio Constitution, Article II, Section 28, which provides "[t]he general assembly shall have no power to pass retroactive laws." *See Brooks* at ¶ 9; *Hyle* at ¶ 7-9. Whether a statute is unconstitutionally retroactive, "depends on whether it is 'remedial' or 'substantive'—if the law is 'remedial,' then its retroactive application is constitutional; if the law is substantive, then its retroactive application is unconstitutional." *Brooks* at ¶ 10. Laws affecting procedure are typically remedial in nature, while laws that affect rights are substantive. *Id.*

{¶14} We do not find any language in R.C. 2901.09 to suggest that the General Assembly intended it to apply retroactively. Our sister districts who have spoken on the matter, agree with this conclusion. *See State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, ¶ 58 ("There is no language in amended R.C. 2901.09 indicating that the General Assembly intended the statute to be applied retroactively."); *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 17 ("we find no language in the amended R.C. 2901.09 that would indicate the legislature obviously intended the statute to be applied retroactively."). On this basis alone, we could overrule the assignment. *See Degahson* at ¶ 17; *Hyle,* 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, at ¶ 9 ("We do not address the question of constitutional retroactivity unless and until we determine that the General Assembly expressly made the statute retroactive.").

**{¶15}** Parker concedes that the statute is not expressly retroactive, but he argues that it still should have been applied at his trial because it is procedural, like the statute at issue in *State v. Pitts,* 2020-Ohio-5494, 163 N.E.3d 1169 (1st Dist.) (holding that the H.B. 228 amendments to R.C. 2901.05 were procedural and should apply to all trials after the effective date, regardless of the date of the offense). However, the Second District has held that R.C. 2901.09 is substantive because it "did more than just alter a procedure; it expanded the law, creating a new right * * * ." *Degahson* at ¶ 19. Other courts across the country, including those in Kentucky, Michigan, Florida, Alaska, and Louisiana, have found similar changes in self-defense statutes to be substantive. *See Degahson* at ¶ 20 (collecting cases). We agree and hold that the statute is substantive. By removing the duty to retreat, S.B. 175 effectively *created a right* where one did not exist before: the right to stand one's ground "if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B). This is necessarily a substantive change in the law. *See Degahson* at ¶ 19-20; *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 106-107, 522 N.E.2d 489 (1988), *superseded by statute on other grounds*, as recognized in *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 696 N.E.2d 1044 (1998) ("a statute is substantive when it * * * imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction; creates a new right out of an act which gave no right and imposed no obligation when it occurred; [or] creates a new right.").

**{¶16}** Moreover, application of R.C. 1.58 yields the same result. When a criminal statute is amended, " 'the substantive provisions of the former law apply to all pending prosecutions, but the defendants receive the benefit of a reduced "penalty,

forfeiture, or punishment" in the statute as amended * * *.' " *Hurt* at ¶ 59, quoting *State v. Solomon,* 2012-Ohio-5755, 983 N.E.2d 872, ¶ 16 (1st Dist.), citing R.C. 1.58. [4]

{¶17}   Because S.B. 175 "does not set out a penalty, punishment, or forfeiture, but instead provides the substantive law regarding an individual's duty to retreat before using self-defense," the former law was correctly applied to Parker's case. *Hurt,* 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, at ¶ 61; *see Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, at ¶ 21-22 (holding that the trial court's decision to instruct the jury based on former R.C. 2901.09 was also consistent with R.C. 1.58).

{¶18}   For all of these reasons, the trial court did not err in instructing the jury based on the former self-defense statute.   The first assignment of error is overruled.

### *Ineffective Assistance of Counsel*

{¶19}   In his second assignment of error, Parker contends that his trial counsel was ineffective for failing to object to the jury instruction on self-defense.

---

[4] R.C. 1.58 provides,
> (A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:
>> (1) Affect the prior operation of the statute or any prior action taken thereunder;
>> (2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;
>> (3) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;
>> (4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.
> (B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

{¶20} To reverse a conviction for ineffective assistance of counsel, the defendant must demonstrate that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) the performance caused actual prejudice to the defendant, meaning there is a reasonable probability that the outcome would have been different, but for the deficient performance. *State v. Rosemond*, 1st Dist. Hamilton No. C-180221, 2022-Ohio-111, ¶ 10, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Appellant's failure to satisfy either prong is dispositive. *Rosemond* at ¶ 11; *Strickland* at 697.

{¶21} Parker's ineffective-assistance argument relies entirely on a determination that the court incorrectly instructed the jury on self-defense. However, because we determined that the court correctly instructed the jury on self-defense, we likewise hold that counsel was not deficient for failing to object to that instruction. The second assignment of error is overruled.

### *Manifest Weight of the Evidence*

{¶22} In his third assignment of error, Parker contends that his convictions run counter to the manifest weight of the evidence. More specifically, he argues that the state failed to prove beyond a reasonable doubt that he was not acting in self-defense.

{¶23} A manifest-weight argument "challenges the believability of the evidence." *State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271 and C-200272, 2021-Ohio-3086, ¶ 10. When we review a challenge to the manifest weight of the evidence, we must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way

and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins,* 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).

**{¶24}** The court should only reverse the conviction and grant a new trial in "exceptional case[s] in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus. This is because "the weight to be given the evidence and credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶25}** At the time of Parker's trial, the elements of self-defense in the use of deadly force were as follows:

> (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape from such a danger was in the use of such force, and
>
> (3) the defendant did not violate any duty to retreat or avoid the danger.

*State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 48. "The state need only disprove one of the elements of self-defense beyond a reasonable doubt." *Id.* at ¶ 51, citing *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 10.

**{¶26}** Parker first contends that he was not at fault in creating the conflict. This argument finds support in the record. Both Moore brothers, Tisa, Danielle, and Parker all testified that the altercation began as a verbal dispute between Tisa and Jasmine. Tisa testified that she was intoxicated and was the primary aggressor among

her group. While the details of the incident get murky as the dispute progresses, the parties generally agree that Parker did not start the dispute.

{¶27} However, Parker has not demonstrated that the jury clearly lost its way in finding that he did not have a reasonable belief, and an honest belief, that he was in danger of death or great bodily harm. "A defendant's belief that she was in immediate danger of death or great bodily harm must be objectively reasonable, and the defendant must have an honest belief that she was in such danger." *Smith* at ¶ 56. Parker contends that he had a reasonable fear of death or great bodily harm at the hands of the Moore brothers. As grounds for this fear, he cites one punch and a verbal threat from Jeff. While the parties acknowledge some of the women in the groups were attempting to punch one another, Jeff testified that he never threw a punch, and that no one ever hit Parker. Danielle testified that she never saw Jeff throw a punch and added that she also did not throw any punches. Frederick testified that he also did not attempt to punch Parker and that no one else, male or female, did either. Regarding the verbal threat, Parker testified that "I believe one time [Jeff] said he was going to kill us all," and that after hearing this, "I brandished the firearm and tried to deescalate the situation in a way."

{¶28} Parker also argues that he had an honest belief that he was in imminent danger of death or great bodily harm because he thought that the others may have weapons and because he was outnumbered. However, Parker did not testify about *why* he believed they might have had weapons, and both brothers testified that they did not have weapons.

{¶29} Parker's arguments are largely a matter of conflicting testimony between Parker and the victims, and rely heavily on credibility determinations.

Credibility issues are best left to the jury because the jury sees the witnesses testify firsthand and can better assess their demeanor and credibility. *State v. Davis*, 1st Dist. Hamilton Nos. C-200249, C-200250, C-200251, and C-200252, 2021-Ohio-2954, citing *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *State v. Cruzbaez*, 1st Dist. Hamilton No. C-180263, 2019-Ohio-2452, ¶ 22-23. Parker has not demonstrated, and we do not believe, that the jury "clearly lost its way and created a manifest miscarriage of justice." *See State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16. The third assignment of error is overruled.

### *Sentencing Findings*

{¶30} In his fourth assignment of error, Parker argues that the court erred when it imposed consecutive sentences without making the required findings under R.C. 2929.14(C)(4). The state concedes the error.

{¶31} The Ohio Revised Code provides that an appellate court may modify or vacate a sentence if it finds by clear and convincing evidence,

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; [or]
>
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶32} When a trial court imposes consecutive sentences, it must "make[] the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate[] its findings into its sentencing entry." *State v. Jackson*, 1st Dist. Hamilton Nos. C-180245 and C-180246, 2019-Ohio-3299, ¶ 27, citing *State v. Bonnell*, 140 Ohio St.3d

12

209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. While the exact words of the statute need not be used, the appellate court must be able to discern that the trial court engaged in the correct analysis, and the record must contain evidence to support the findings. *Id.* Failure to make the required findings renders the imposition of consecutive sentences contrary to law. *Jackson* at ¶ 45.

{¶33} First, the court must find "that the consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). Second, "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Third, the court must make *one* of the findings in R.C. 2929.14(C)(4)(a),(b) or (c).5 *Id.*

{¶34} At the July 15, 2021 sentencing hearing, the court made a finding under R.C. 2929.14(C)(4)(b) that, "the harm caused to these two individuals, not one, but two, was so great or unusual that no single prison sentence could adequately reflect the seriousness of the offender's conduct had I not given consecutive sentences." The entry contains a corresponding finding. Thus, the court properly made the third finding.

{¶35} Moreover, Parker concedes that it may be inferred from the record that that the court felt consecutive sentences were necessary to punish him. Because the

---

5 R.C. 2929.14(C)(4)(a), (b), and (c) provide,
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

court discussed Parker's choice to escalate the situation and the corresponding harm suffered by the victims, and because the court wrote in its March 8, 2022 nunc pro tunc entry that the consecutive sentences were "necessary to protect [the] public and punish the defendant," we agree.

{¶36} However, both parties agree that the court failed to make the second finding—proportionality. We also cannot discern from the record that the trial judge made a proportionality finding. And while the court added proportionality language to the March 8, 2022 nunc pro tunc entry, "[w]here the trial court fails to make a required finding at a sentencing hearing for consecutive sentences under R.C. 2929.14(C)(4), the error cannot be cured nunc pro tunc, and the proper remedy is remand for a new hearing." *Jackson*, 1st Dist. Hamilton Nos. C-180245 and C-180246, 2019-Ohio-3299, at ¶ 44, citing *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 260. Thus, the trial court failed to make the required proportionality finding.

{¶37} Therefore, because the trial court failed to make the findings required by R.C. 2929.14(C)(4) prior to imposing consecutive sentences, we sustain Parker's fourth assignment of error. Thus, we vacate the consecutive nature of Parker's sentences and remand for a new sentencing hearing on that issue.

### *Conclusion*

{¶38} In light of the foregoing analysis, we overrule Parker's first, second, and third assignments of error, but sustain his fourth assignment of error. Accordingly, we affirm the trial court's judgment in part, reverse it in part, vacate the consecutive nature of Parker's sentences, and remand the cause for a new sentencing hearing on the consecutive-sentencing issue only.

Judgment affirmed in part, reversed in part, and cause remanded.

**ZAYAS, P. J.,** and **WINKLER, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.